## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANTHONY LATERZA, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| | ) Civil Action No. 06-1158 (RWR) |
| v. | ) |
| | ) |
| FEDERAL BUREAU OF PRISONS, et al. | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' MOTION TO DISMISS OR,
## IN THE ALTERNATIVE, TO TRANSFER VENUE

Defendants, Federal Bureau of Prisons ("BOP") and its employees BOP Administrator,

National Inmate Appeals Harrell Watts and Coleman, Florida Federal Correctional Institute (FCI)

Warden Charles Lockett (Lockett), named in both their official and individual capacities, by and

through undersigned counsel, hereby respectfully move, pursuant to Fed. R. Civ. P. 12(b)(1), (2),

(3), (4), and (6), for dismissal of this action for lack of subject matter jurisdiction, in personam

jurisdiction, improper venue, insufficiency of process, and failure to state a claim upon which

relief may be granted.[1]  In the alternative, in the event that the Court determines not to dismiss

this case, defendants move pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. §§ 1404(a), that the

Court exercise its discretion to transfer venue to the Middle District of Florida, where the

plaintiff and the Coleman, Florida FCI is located.

Pro se plaintiff is hereby advised that failure to respond to a dispositive motion may result

---

[1] Defendants Watts and Lockett appear in their official capacities only.  They have not been served personally, so do not appear to be a party in their personal capacity at this time, and defendants should be deemed to preserve all defenses available to them, including insufficiency of service of process and immunity from suit.

in the district court granting the motion and dismissing the case. See Fox v. Strickland, 837 F.3d 507, 509 (D.C. Cir. 1988).

In support of this motion, the Court is respectfully referred to the accompanying Memorandum of Points and Authorities and to the entire record in this case. A proposed Order consistent with the relief sought herein is attached.

Respectfully submitted,

JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

QUAN K. LUONG
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E-4417
Washington, D.C. 20530
(202) 514-9150 (telephone)
(202) 514-8780 (facsimile)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ANTHONY LATERZA, | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| | ) **Civil Action No. 06-1158 (RWR)** |
| v. | ) |
| | ) |
| FEDERAL BUREAU OF PRISONS, et al. | ) |
| | ) |
| **Defendants.** | ) |

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT, OR
IN THE ALTERNATIVE, TO TRANSFER

## I.    Introduction

Defendants hereby submit this memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 12(b)(1), (2), (3), (4), and (6).  For the reasons set forth below, the defendants respectfully request that the Court dismiss this matter in its entirety.

## II.    Factual Background

Plaintiff, *pro se* in this action, is federal inmate Anthony Laterza, Reg. No. 74695-004, currently serving a sixty (60) month sentence for a violation of 21 U.S.C. § 841 (A)(1) - manufacturing more than 100 marijuana plants.  See Public Information Inmate Data.  Plaintiff is

1

presently housed at the Federal Correctional Institute (FCI) in Coleman, Florida and has a projected release date of March 12, 2007. Id.

Pursuant to 18 U.S.C. § 3621, a prisoner convicted of a nonviolent offense and who has successfully completed a residential drug abuse treatment program *may* have his period of custody reduced by the BOP. 18 U.S.C. § 3621(e)(2)(B) (emphasis added). In 2004, plaintiff was interviewed and accepted for admission to the Residential Drug Abuse Program (RDAP) at Coleman, Florida FCI. Prior to beginning the program, BOP staff advised the plaintiff that, given his criminal history, he would not be eligible for the sentence reduction. In particular, the sentence reduction was denied because the plaintiff committed a crime that "has as an element, the actual, attempted, or threatened use of force against the person or property of another." 28 C.F.R. §550.58.[1] On September 27, 2005, plaintiff voluntarily withdrew from the RDAP program.

Plaintiff filed the instant complaint on June 26, 2006 pursuant to *Bivens*.[2] Compl. at 1-2.[3] Specifically, plaintiff alleges that his First, Sixth, Eighth, and Fourteenth Amendment rights were violated: (1) when he was denied a sentence reduction under 18 U.S.C. § 3621 (e)(2)(b) for participating in the RDAP; (2) when he was denied a transfer to a minimum security facility to complete the RDAP; and (3) when he was not provided with a safe environment under which he could complete the RDAP. Id. at p. 9-10. Plaintiff names as defendants the Bureau of Prisons

---

[1] On June 7, 2006, the Eleventh Circuit upheld plaintiff's sentence and conviction. Criminal Case Dckt., Doc. 125, Judgment in United States v. Anthony Laterza, No. 03-12499 (11th Cir. June 7, 2006) (per curiam).

[2] Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

[3] In citing to the plaintiff's complaint, this memorandum cites to the page number designated by the Court's ECF system at the top of each page, not to the page numbers inserted by the plaintiff at the bottom of each page.

(BOP) and three individual defendants, (1) BOP Administrator, National Inmate Appeals Harrell

Watts, (2) Coleman, Florida FCI Warden Charles Lockett, and (3) a "Mr. Sero."[4]  Id. at p. 1.  The

individual defendants are named in both their official and individual capacities.  Id.

As relief, plaintiff requests punitive and compensatory damages in the amount of $5,000,000

from defendant BOP and $1,000,000 from each of the individual defendants.  Compl. at 13.  He also

seeks injunctive relief in the way of an immediate release.  Id.


## III.    Argument

### A.    Sovereign Immunity Bars Any Constitutional Claims Against BOP And The Individual Defendants In Their Official Capacities – Fed. R. Civ. P. 12(b)(1)

To the extent that plaintiff seeks damages for alleged constitutional violations against BOP

and the individual defendants in their official capacities, their claims must be dismissed absent a

waiver of sovereign immunity.  Meyer v. Reno,  911 F. Supp. 11 (D.D.C. 1996); Marshall v. Reno,

915 F. Supp. 426 (D.D.C. 1996); Deutsch v. U.S. Dept. of Justice, 881 F. Supp. 49, 55 (D.D.C.

1995).  The inherent sovereign immunity of the United States protects it and its agencies [such as

the BOP] from suit absent express waiver.  See United States v. Nordic Village, 503 U.S. 30 (1992).

Sovereign immunity also bars suits for money damages against officials in their official capacities

for nondiscretionary acts absent a specific waiver by the government.  Clark v. Library of Congress,

750 F.2d 89, 101-02 (D.C. Cir. 1984).  Plaintiff's complaint does not contain any colorable basis for

---

[4] There is no "Mr. Sero" employed by the BOP.  In all likelihood, plaintiff is referring to the BOP's Southeast Regional Office, commonly called "SERO".

3

such a waiver.[5]  Therefore, to the extent plaintiff asserts claims for damages against the individual

defendants in their official capacities and the BOP as an agency, such claims must be dismissed for

lack of subject matter jurisdiction.

**B.      This Court Has No Personal Jurisdiction – Fed. R. Civ. P. 12(b)(2)**

Plaintiff has not shown that any of the individual defendants named in this lawsuit are

residents of the District of Columbia.  Therefore, there is no in personam jurisdiction.

**1.  Plaintiff's burden**

It is the plaintiff who bears the burden of pleading the facts necessary to substantiate in

personam jurisdiction in this Court.  Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 240 (2d Cir.

1999).  As explained by this Court in Edmond v. U.S. Postal Service, 727 F. Supp. 7, 10

(D. D.C. 1989), aff'd in part and rev'd in part, 949 F.2d 415 (D. C. Cir. 1991):

> A plaintiff in district court must plead essential jurisdictional facts and must carry
> throughout the litigation the burden of showing that he is properly in court.  "If his
> allegations of jurisdictional facts are challenged by his adversary in any appropriate
> manner, he must support them by competent proof.  And where they are not so
> challenged the court may still insist that the jurisdictional facts be established or the
> case be dismissed, and for that purpose the court may demand that the party alleging
> jurisdiction justify his allegations by a preponderance of evidence."  McNutt v.
> General Motors Acceptance Corp., 298 U.S. 178, 189 (1936).

Plaintiff has failed and cannot meet his burden to establish such necessary facts.  All defendants are

moving for their dismissal from this lawsuit based upon lack of in personam jurisdiction, pursuant

to Fed. R. Civ. P. 12(b)(2).

---

[5] When a plaintiff seeks monetary relief in tort against a department of the United States,
the only possible basis for relief would be under the Federal Tort Claims Act ("FTCA"), 28
U.S.C. § 1346(b).  Plaintiff does not assert that he has exhausted necessary administrative
remedies under the FTCA, which is a prerequisite to bringing an FTCA claim.  GAF Corp. v.
United States, 818 F.2d 901, 904-05 & n.6 (D.C. Cir. 1987).

### 2. D.C. Code §13-423, the "Long Arm" statute

In personal capacity suits, *personam* jurisdiction may be maintained by the United States District Court for the District of Columbia only if permitted by the "long arm" laws of the District of Columbia. Crane v. Carr, 814 F. 2d 758, 762 (D.C. Cir. 1987). The District of Columbia exercises personal jurisdiction based upon the D.C. Code's "long arm" statute at D.C. Code §13-423 (2000), which states in relevant part:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's–
>
> > (1) transacting any business in the District of Columbia;
> > (2) contracting to supply services in the District of Columbia;
> > (3) causing tortuous injury in the District of Columbia by an act or omission in the District of Columbia;
> > (4) causing tortuous injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;
> > (5) having an interest in, using, or possessing real property in the District of Columbia;
> > (6) contracting to insure or act as surety . . . ; or
> > (7) marital or parent and child relationship. . . .
>
> (b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

In the instant case, plaintiff's pleading does not establish proper *in personam* jurisdiction in the United States District Court for the District of Columbia under § 13-423. Crane at 762. First, it is undisputed that Defendant Lockett is employed at the Coleman, Florida FCI. Moreover, the plaintiff does not allege that defendants Lockett or Watts transacted any business or contracted to supply services in the District of Columbia, nor have they caused any tortious injury in the District

5

of Columbia. Moreover, *in personam* jurisdiction cannot be predicated on the provisions of the sections (a)(3) and (4) of the "long arm" statute because the plaintiff does not and cannot claim that the federal employees at the federal prison where he was housed outside the District caused him tortious injury within the District of Columbia. Nor can he assert that any federal employees located in the Southeast Regional Office in Atlanta, GA caused him injury in the District of Columbia. The injuries about which plaintiff complains occurred in Coleman, Florida and he alleges no facts to establish that he suffered any injury in the District of Columbia. See Farmer v. Moritsugu, 163 F.3d 610 (D.C. Cir. 1998) (local medical staff treating in BOP institutions outside D.C. not subject to personal jurisdiction); Meyer v. Federal Bureau of Prisons, 940 F. Supp. 9 (D. D.C. 1996) (No personal jurisdiction over Bureau of Prisons case manager working in Rochester, Minnesota, sued in D.C. in individual capacity by inmate based upon claimed inaccuracy of prison records). There is no *act* or *injury* alleged to have been accomplished within the District of Columbia by any of these defendants. Any injury to plaintiff necessarily took place outside the District of Columbia, since he was never housed here and all allegations in this action pertain to his incarceration in the Coleman, Florida FCI. Therefore, this Court lacks personal jurisdiction over the defendants for activities taking place outside the District of Columbia.

### 3. In personam jurisdiction requires "minimum contacts"

In order for the District Court for the District of Columbia to have personal jurisdiction over a non-resident defendant sued in his individual capacity, jurisdiction must be proper under both the District of Columbia long-arm statute and consistent with the demands of due process. United States v. Ferrara, 54 F.3d 825, 828 (D.C. Cir. 1995); Crane v. Carr, 814 F.2d 758, 762 (D.C. Cir. 1987). "Since the District of Columbia's long-arm statute has been held to extend as far as the Due Process

Clause allows, Mouzavires v. Baxter, 434 A.2d 988 (D.C. 1981) (en banc), cert. denied, 455 U.S.

1006 (1982), personal jurisdiction exists when the defendant has purposely established minimum

contacts with the forum state and when the exercise of jurisdiction comports with 'traditional notions

of fair play and substantial justice.' Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102

(1987)." Wiggins v. Equifax Inc., 853 F. Supp. 500 (D. D.C. 1994). "Plaintiff's claim for relief

must arise from the defendants' contacts with the District of Columbia and his 'claims must bear

some relation to the acts in the District that are relied upon to confer personal jurisdiction.' [D.C.

Code] § 13-423(b). Bayles v. K-Mart Corp., 636 F. Supp. 852, 854 (D.D.C. 1986)." Id. at 502.

The burden is again on the plaintiff to establish that this Court can exercise personal

jurisdiction over defendants consistent with the Due Process Clause. Blumenthal v. Drudge, 992 F.

Supp. 44, 53 (D. D.C. 1998). Plaintiff in this case has wholly failed to allege such facts, and the

allegations against all these defendants do not establish "minimum contacts" necessary to confer

personal jurisdiction upon the District Court for the District of Columbia.

The presence in the District of Columbia of the defendants must be "continuous and

systematic" and relative to the claim to meet the "minimum contacts" requirement. International

Shoe Co. v. Washington, 326 U.S. 310 (1945). In this case these non-resident defendants lack the

requisite minimum contacts with the District of Columbia because the operative facts of any claim

herein arose in Florida. Therefore, defendants' motions to dismiss under Rule 12(b)(2) should be

granted, and they should be dismissed from this suit.

**C.    Venue Is Improper – Fed. R. Civ. P. 12(b)(3).**

Plaintiff's *Bivens* claims against the individual defendants must also be dismissed pursuant

to Fed. R. Civ. P. 12(b)(3) for improper venue. Venue in Bivens cases is governed by 28 U.S.C.

§ 1391(b). See Stafford v. Briggs, 444 U.S. 527, 544 (1980); Cameron v. Thornburgh, 983 F.2d 253, 257 (D.C. Cir. 1993); Pollack v. Meese, 737 F. Supp. 663, 665 (D.D.C. 1990). Under § 1391(b), a *Bivens* cause of action may be brought only in a judicial district where: (1) any defendant resides if all defendants reside in the same state; (2) a substantial part of the events or omissions giving rise to the claim occurred; or (3) any defendant may be found if there is no district in which the action may otherwise be brought. See 28 U.S.C. § 1391(b).

Historically, the D.C. federal courts do not permit inmates incarcerated in other jurisdictions to challenge conditions of confinement in this district simply because it is the location of the Bureau's Central Office. The BOP has over 170,000 inmates in over 100 institutions nationwide. See www.bop.gov ("public information, quick facts and statistics"). Courts recognize the danger of giving all federal inmates the opportunity to bring their claims here in the district: "Courts in this circuit must examine the challenges to personal jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia." Cameron v. Thornburgh, 983 F.2d 253, 256 (D.C. Cir. 1993).

In the instant case, venue is not proper in United States District Court for the District of Columbia under 28 U.S.C. § 1391(b). Plaintiff has provided no evidence that any of the federal defendants reside in the same state, none of the events giving rise to the claim occurred within the District of Columbia, and plaintiff does not reside in the District, therefore, venue is improper in the District of Columbia pursuant to 28 U.S.C. § 1391(b) and Meyer v. Reno, et al., 911 F. Supp. 11, 15 (D.D.C. 1996). Because venue is improper, the Court should dismiss plaintiff's *Bivens* claims under Fed. R. Civ. P. 12(b)(3).

**D.** **Plaintiff Has Not Perfected Service Against Individual Defendants – Fed. R. Civ. P. 12(b)(5)**

None of the individual defendants in this action were properly served with the complaint in accordance with the rules applicable to individual defendants. Simpkins v. District of Columbia Government, 108 F.3d 366, 369 (D.C. Cir. 1997). It is well established that, in an action against a federal employee in his or her individual capacity, the individually-sued defendant must be served with process in accordance with Rule 4(e) of the Federal Rules of Civil Procedure. Id. Rule 4(e) provides that service is effectuated by complying with the laws of the state for such in which the district court is located by delivering a copy of the summons and complaint to the defendant (or his appointed agent) personally, or by leaving copies thereof at the defendant dwelling house or usual place of abode with some person of suitable age and discretion who resides there. Fed. R. Civ. P. 4(e). The SCR-Civil 4(e)(2) allows for service upon individuals by first class, certified or registered mail. Actual notice will not, of course, substitute for technically proper service under Rule 4 and will not permit the Court to render a personal judgment against an individually-sued defendant. Sieg v. Karnes, 693 F.2d 803 (8th Cir. 1982); See also Stafford v. Briggs, 444 U.S. 527 (1980).

In this case, plaintiff served the individual defendants only at their respective places of employment. See Docket Entries 8 and 9. Service at the defendant's place of employment is not proper service. Because the record in this action is devoid of any evidence of proper personal service upon the federal defendants in their individual capacities, this action cannot proceed against them individually and all claims against the defendants in their individual capacity should be dismissed.

The District Court will lack jurisdiction over the federal officials, until all of the provisions of Rule 4(i)(1) and (2) are met. Ecclesiastical Order of the Ism of Am, Inc. v. Chasin, 845 F.2d 113,

9

116 (6th Cir. 1988); <u>Sanchez-Mariani v. Ellingwood</u>, 691 F.2d 592, 594 (1st Cir. 1982). It is the plaintiff in a civil action who has the burden of establishing the validity of service of process. <u>Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.</u>, 988 F.2d 476, 488 (3d Cir. 1993); <u>Lensel Lopez v. Cordero</u>, 659 F. Supp. 889, 890 (P.R. 1987). Therefore, if that cannot be demonstrated, this case should be dismissed based upon insufficiency of service of process under Rule 12(b)(5). Accordingly, claims against the individual defendants should be dismissed.

### E.    Plaintiff Fails to State a Claim Upon Which Relief Can be Granted – Fed. Rule Civ. P. 12(b)(6)

#### 1. Plaintiff states no basis for *Bivens* claims brought against defendants Watts and Lockett and respondeat superior may not be the basis of a *Bivens* suit

Respondeat superior has been consistently rejected as a basis for the imposition of §1983 or *Bivens* liability. <u>Marshall v. Reno</u>, 915 F.Supp. 426, 430 (D.D.C. 1996); <u>see also</u> <u>Monell v. Dep't of Social Srvcs</u>, 436 U.S. 658, 691 (1978); <u>Boykin v. District of Columbia</u>, 689 F.2d 1092, 1097-99 (D.C. cir. 1982); <u>Estate of Rosenberg v. Crandell</u>, 56 F.3d 35, 37 (8th Cir. 1987). In the absence of allegations that the named defendants personally participated in the events that gave rise to the plaintiff's claims or any corroborative allegations to support the inference that these defendants had notice of or acquiesced in such events, dismissal is appropriate. <u>Marshall</u> at 429-30. <u>See also</u> <u>Cameron v. Thornburg</u>, 983 F.2d 253, 258 (D.C. Cir. 1993) (complaint naming Attorney General and BOP Director as defendants based on theory of respondeat superior, without allegations specifying their involvement in the case, do not state *Bivens* claim).

In the instant case, plaintiff fails to set forth any specific allegations of direct involvement or participation by defendants Watts or Lockett in any alleged Constitutional violations against him. The only instances in which plaintiff even names either defendant is only in reference to their role

10

in the administrative grievance process. Compl. at p. 4-5, 9-10. However, in Harrison v. Lappin, 2005 WL 752189, *4 (D.D.C. 2005), the Court held that the "mere fact that [defendant] supervises other BOP staff who may have addressed plaintiff's inmate grievances in not a sufficient basis to hold [him] liable for their alleged unconstitutional action." It is clear from the complaint that this action against defendants Watts and Lockett is predicated upon nothing more than their general supervisory responsibilities. Even assuming arguendo that subordinate BOP personnel somehow violated the plaintiff's constitutional rights, absent any allegations of direct involvement by defendants Watts or Lockett in such violations, any *Bivens* claims against them must be dismissed.[6]

### 2. Plaintiff does not have a Constitutional right to participate in the RDAP nor does he have a protected "liberty" interest in the one year sentence reduction

Plaintiff alleges that by denying him a sentence reduction for participating in the RDAP, denying his request for transfer to a minimum security facility to complete the RDAP, and failing to provide him with a safe environment under which he could complete the RDAP, the defendants caused him to be incarcerated in the Coleman, Florida FCI eight months longer than he otherwise should or would have been. Compl. at 2, 5-6. In effect, plaintiff appears to be claiming that he has an enforceable liberty interest in being admitted to the RDAP and in receiving a one-year sentence reduction after the completion of the program.

The courts have held that the "Constitution does not create a liberty interest in a prisoner receiving a reduced sentence for completion of a drug rehabilitation program." See Paydon v. Hawk, 960 F.Supp. 867, 871 (D.N.J. 1997) (recognizing Jacks v. Crabtree, 114 F.3d 983 (9th Cir. 1997), cert. den. 140 L.Ed.2d 325 (1998)("Not only is section 3621(e)(2)(B) written in nonmandatory

---

[6] Defendants were acting within the scope of employment.

11

language, but denial of the one-year reduction doesn't 'impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' In fact, denial merely means that the inmate will have to serve out his sentence as expected."); Fristoe v. Thompson, 144 F.3d 627, 630 (10th Cir. 1998) (stating that "[a] statute which allows a decision maker to deny the requested relief within its unfettered discretion does not create a constitutionally recognized liberty interest"). Clearly, "a denial of a reduction of sentence under 18 U.S.C. § 3621 (e)(2)(B) does not deny plaintiff a liberty interest cognizable under the Due Process clause. The statute is discretionary and is not 'a dramatic departure from the basic conditions of Plaintiff's sentence." Fonner v. Thompson, 955 F.Supp. 638, 642 (N.D.W.Va. 1997) (quoting Sandin v. Conner, 115 S.Ct. 2293, 2301 (1995)(which stated that due process rights created by prison regulations are "limited to freedom from restraint which..., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.").

Moreover, eligibility for the sentence reduction does not create an entitlement to the sentence reduction. See Bush v. Pitzer, 133 F.3d 455, 457 (7th Cir. 1998). The BOP's discretion also extends to determining how long a sentence reduction the nonviolent inmates will get after successfully completing the rehabilitation program. Lasorsa v. Spears, 2 F.Supp.2d 550, 555 (S.D.N.Y. 1998). Therefore, the BOP has unlimited discretion to make determinations of eligibility and sentence reduction.

As the case law demonstrates, plaintiff did not have a constitutional right to participate in the RDAP, nor did he have any liberty interest in the one-year sentence reduction that *may* be given for the successful completion of the RDAP. Thus, setting aside the fact that the plaintiff did not even complete the RDAP program, to the extent that he is attempting to raise due process claims

12

predicated on any such interest, such claim fails to state a claim upon which relief can be granted and should be dismissed.

### 3. Plaintiff fails to state a cognizable claim under the Equal Protection clause

Plaintiff also asserts that he was not provided with "an equal opportunity to participate in and complete the RDAP at Coleman Low as other inmates who participated in the RDAP at Coleman Low at the same time." Compl. at p. 10, ¶5. He alleges that this constitutes "a violation of the Fourteenth Amendment (Equal Protection under the Law)." Id. The guarantee of equal protection by the federal government is secured by the Fifth Amendment, not the Fourteenth Amendment. Bolling v. Sharpe, 347 U.S. 497, 499 (1954). It is undisputed that the defendants in this case are all federal officials and the plaintiff does not allege that any constitutional deprivations were accomplished under color of state law. As such, plaintiff's equal protection claim under the Fourteenth Amendment is inapplicable. For purposes of this motion, defendants will presume that plaintiff intends to raise his equal protection claim under the Fifth Amendment.

The Equal Protection clause demands that the government apply its laws in a rational and nonarbitrary manner. See Plyler v. Doe, 457 U.S. 202, 216 (1982); Pryor-El v. Kelly, 892 F.Supp. 261 (D.D.C. 1995). However, "the conscious exercise of some selectivity in enforcement is not itself a federal constitutional violation." Pryor-El 892 F.Supp. at 270 (quoting Oyler v. Boles, 368 U.S. 448, 456 (1962). For an equal protection claim to be validated in the prison context, an inmate must first establish two necessary predicates. First, the inmate must establish that he or she was treated differently than other prisoners in his or her circumstances. Id. (citing Brandon v. District of Columbia Bd. of Parole, 823 F.2d 644, 650 (D.C.Cir. 1987). Second, he or she must establish that such unequal treatment was the result of intentional or purposeful discrimination. Id. See also King

13

v. U.S. Parole Commission, No. 02-5207, 2002 WL 31520756 (D.C. Cir. Nov. 13, 2002) (holding that offender had not shown that he was a member of a suspect class and finding that the Commission had a legitimate reason for its decision).

Plaintiff's sparse allegations fall well short of this standard. In his complaint, plaintiff only baldly alleges that he was treated differently from other inmates. However, other than mere conclusory statements that he was denied a transfer or that he was not provided with a safe environment, plaintiff fails to clearly set forth any allegations to show that any inmates similarly situated to him were treated differently.

Even assuming that plaintiff was somehow treated differently, he does not offer any allegations that raise an inference of intentional or purposeful discrimination on the part of the BOP defendants. See McCleskey v. Kemp, 481 U.S. 279, 297, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987) (holding that a complaining party must show "*exceptionally clear proof*" that the government abused its discretion) (emphasis added). Hilliard v. Board of Pardons and Paroles, 759 F.2d at 1193 (holding that prisoner who claimed that he was treated differently in retaliation for his involvement in a lawsuit against corrections department failed to state a claim because he alleged no supporting facts); Cruz v. Skelton, 543 F.2d 86, 92 (5th Cir. 1976), cert. denied 433 U.S. 911 (1977) (holding that plaintiff failed to provide a factual basis for his allegations that the parole board discriminated against him based upon geographic location); Fuller v. Georgia State Board of Pardons and Paroles, 851 F.2d 1307, 1310 (11th Cir. 1988) (inmate failed to show that he was similarly situated to other inmates who were granted parole). Absent any showing at all, this Equal Protection claim is without merit.

### 4. Defendant's actions did not violate the Plaintiff's right to protection against double jeopardy

Plaintiff also appears to argue that the denial of the sentence reduction constitutes double jeopardy and violates both the Fifth and Sixth Amendments. Compl. at 9. Though not clearly stated, plaintiff's claims appear to be premised upon the argument that prison officials improperly relied upon acquitted conduct in denying him a sentence reduction under the RDAP. Id. Plaintiff's arguments are misplaced and unsupported by the facts and the law.

Neither the double jeopardy clause of the Fifth Amendment, nor any provision of the Sixth Amendment is even applicable in this case because plaintiff's allegations are unrelated to any legal proceeding involving criminal charges against him. Rather, plaintiff's claims revolve around the prison's administration of its RDAP program and the plaintiff's assertion of entitlement to a sentence reduction for the completion of that program. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). A convicted inmate does not have a constitutional right to be conditionally released before the expiration of a sentence validly imposed. See Fristoe, supra, at 630. See Wiggins v. Wise, 951 F.Supp. 621, n. 8 (S.D.W.Va. 1996), (quoting Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, (1979). As discussed above, the courts have repeatedly held that in light of the delegation of discretion to the Bureau of Prisons, 18 U.S.C. § 3621 (e) does not create a constitutionally protected right. See above.

Moreover, even assuming that the Fifth and Sixth Amendments did apply, it is well-settled that the use of acquitted conduct in sentencing does not violate the Constitution. See Watts v. United States, 519 U.S. 148, 155 (1997) (use of acquitted conduct does not violate double jeopardy); United

15

States v. Dorcely, 454 F.3d 356, 372 (D.C. Cir. 2006) (use of acquitted conduct does not violate the

Fifth or Sixth Amendment of the Constitution) (*citing* Watts); United States v. Duncan, 400 F.3d

1297, 1304-05 (11th Cir.), cert. denied, --- U.S. ----, 126 S.Ct. 432 (2005) (same).

### 5. Plaintiff fails to assert a valid Eighth Amendment claim

Plaintiff also alleges an Eighth Amendment violation when the "BOP and its Agents failed

to provide a safe environment, intentionally, for the Plaintiff to participate in and complete the

RDAP." Compl. at 6-7. Specifically, plaintiff alleges that on a few occasions between August and

September, 2005, he advised a BOP drug treatment specialist, Ms. Crane, that he had received

physical threats from other inmates and that no proper action was taken. Id. He maintains that these

threats culminated in an assault on him on September 27, 2005. Id.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S.

Const. Amend. VIII. When evaluating claims for cruel and unusual punishment, courts make a

two-part inquiry: (1) whether the defendants acted with a sufficiently culpable state of mind (the

"subjective component"), and (2) whether, in light of "contemporary standards of decency," the

alleged deprivation was sufficiently serious to rise to the level of a constitutional violation (the

"objective component"). Wilson v. Seiter, 501 U.S. 294, 298 (1991).

The subjective component is satisfied by showing "deliberate indifference" by prison

officials. Id. at 303. See Estelle v. Gamble, 429 U.S. 97, 105 (1976) ("deliberate indifference to a

prisoner's serious illness or injury" violates the Eighth Amendment). "[D]eliberate indifference

entails something more than mere negligence [but] is satisfied by something less than acts or

omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer

v. Brennan, 511 U.S. 825, 835 (1994). See Whitley v. Albers, 475 U.S. 312, 319 (1986) ("It is

obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."). To constitute cruel and unusual punishment, conduct "must involve more than ordinary lack of due care for the prisoner's safety; mere negligence will not suffice." Morgan v. Dist. of Columbia, 824 F.2d 1049, 1057 (D.C. Cir. 1987) (citing Whitley, 475 U.S. at 319).

Even assuming that the assault alleged by the plaintiff constitutes "sufficiently serious" pain or injury under the Eighth Amendment, it bears repeating that plaintiff fails to offer any allegations that demonstrates that defendants Watts or Lockett acted with "deliberate indifference" that resulted in a constitutional deprivation. Specifically, plaintiff does not allege that he advised any of the named defendants of the alleged threats against him or that they otherwise had any knowledge of such alleged threats. See Risley v. Hawk, 918 F.Supp. 18, 24 (D.D.C. 1996) (inmate's Eighth Amendment claim dismissed for failure to state a claim where plaintiff alleged that he sent letters to defendants, high level prison officials, complaining of alleged abuses; court held that the letters alone did not demonstrate "subjective knowledge of the risk" to the inmate that gives rise to a claim under the Eighth Amendment). Even if defendants Watts or Lockett were aware of such threats, given the ambiguity of the plaintiff's complaint, it is also unclear whether this knowledge alone would even rise to the level of "deliberate indifference" violative of the Eighth Amendment. Accordingly, this Eighth Amendment claim should be dismissed.

**F.    Defendants Are Entitled To Qualified Immunity**[7]

All of plaintiff's constitutional claims should also be dismissed because defendants are entitled to qualified immunity.  The plaintiff is seeking monetary damages against the individual defendant government officials.  Qualified immunity shields government officials from suit in performance of a discretionary function unless that official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Id.  The D.C. Circuit, in Farmer v. Moritsugu, 163 F.3d 610, 613 (D.C. Cir. 1998), explained:

> In short, "[a]n official is ... entitled to summary judgment [on qualified immunity grounds] unless '[t]he contours of the right [were] sufficiently clear that a reasonable official would [have] underst[ood] that what he [was] doing violate[d] that right.' " Harris v. District of Columbia, 932 F.2d 10, 13 (D.C. Cir. 1991) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987), aff'd 922 F.2d 443 (8th Cir. 1990)).

By "provid[ing] government officials with the ability reasonably to anticipate when their conduct may give rise to liability for damages," Anderson, 483 U.S. at 646, the doctrine of qualified immunity strikes a balance between compensating those injured by official conduct and protecting the Government's basic ability to function. See Harlow, 457 U.S. at 813-14.  In other words, qualified immunity is designed to mitigate the social costs of exposing government officials to personal liability--costs such as "distraction of officials from their governmental duties, inhibition

---

[7] Although not properly served, and hence, not proper parties in their individual capacities, defendants Watts and Lockett would also be protected from personal liability by qualified immunity.

of discretionary action, and deterrence of able people from public service." Id. at 816; see also

Harris, 932 F.2d at 13. To this end, qualified immunity provides not simply a defense to liability,

but also "an entitlement not to stand trial or face the other burdens of litigation, conditioned on the

resolution of the essentially legal question whether the conduct of which the plaintiff complains

violated clearly established law." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

In determining whether a correctional official is entitled to qualified immunity from personal

liability for money damages, there is a two-step process that must be followed by a federal court.

Saucier v. Katz, 121 S. Ct. 2151 (2001). A court must always begin with this first step: "[t]aken in

the light most favorable to the party asserting the injury, do the facts alleged show the officer's

conduct violated a constitutional right?" Id. at 2156. "If no constitutional right would have been

violated were the allegations established, there is no necessity for further inquiries concerning

qualified immunity. On the other hand, if a violation could be made out on a favorable view of the

parties' submissions, the next, sequential step is to ask whether the right was clearly established."

Id. Therefore, if the first portion of the two-pronged test is not met, that is, there is no constitutional

violation, then the defendants are entitled to qualified immunity. See Farmer v. Moritsugu, 163 F.3d

610, 613 (D.C. Cir. 1998) (no Eighth Amendment showing of deliberate indifference by BOP

Medical Director; therefore, he was entitled to qualified immunity); Verdecia v. Adams, 327 F.3d

1171, 1177 (10th Cir. 2003) ("Because Verdecia cannot meet the first portion of the two-pronged

test, the defendants are entitled to qualified immunity.").

In the instant action, the plaintiff fails to allege a single unconstitutional act (or omission) committed by the individually named defendants. As stated above, conclusory allegations without supporting facts or allegations against each named defendant cannot form a <u>Bivens</u> claim upon which relief may be granted. <u>See</u> <u>Martin v. Malhoyt</u>, 830 F.2d 237, 254 (D.C.Cir. 1987). Here, the complaint does not specifically allege that any of the defendants personally took any action in furtherance of the alleged constitutional violation. At most, it merely alleges that these defendants were deliberately indifferent to inmate safety through improper policy and supervision.

Assuming <u>arguendo</u>, the complaint could be interpreted to sufficiently state each named defendant committed unconstitutional acts, plaintiff failed to articulate how these constitutional rights were clearly established. <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987). Accordingly, even under the facts as alleged in the complaint, each of the named defendants is entitled to qualified immunity, and should be dismissed from this lawsuit.

## IV.    Conclusion

For all of the foregoing reasons, this action should be dismissed. If it is not dismissed, it should be transferred to the Middle District of Florida pursuant to 28 U.S.C. §1404(a).

Respectfully submitted,

JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

20

QUAN K. LUONG
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E-4417
Washington, D.C. 20530
(202) 514-9150 (telephone)
(202) 514-8780 (facsimile)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of January, 2007, I caused service of the foregoing DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE to be made on the *pro se* plaintiff via first class mail:

> Anthony V. Laterza
> Reg. No. 74695-004
> FCC Medium
> P.O. Box 1032
> Coleman, FL  33521-1032
>
> Anthony Laterza
> R74695-004
> COMMUNITY CORRECTIONS CENTER
> 1577 North Military Trail
> West Palm Beach, FL 33409

Respectfully submitted,

QUAN K. LUONG
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E-4417
Washington, D.C. 20530
(202) 514-9150 (telephone)
(202) 514-8780 (facsimile)